**Electronically Filed
Intermediate Court of Appeals
29502
06-JAN-2011
09:18 AM**

NO. 29502

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CHELSEA CRIVELLO, as Guardian Ad Litem for
Dominic Kamelamela, a minor, Plaintiff-Appellant,
v.
COUNTY OF HAWAII, Defendant-Appellee,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE JOINT VENTURES 1-10;
and DOE GOVERNMENTAL ENTITIES 1-10, Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 07-1-291)


MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Ginoza, JJ.)

Plaintiff-Appellant Chelsea Crivello, as Guardian Ad Litem for Dominic Kamelamela, a minor[1] (Crivello) appeals from the Final Judgment filed on November 24, 2008 by the Circuit Court of the Third Circuit (circuit court).[2] This case arises from an incident on January 1, 2006 when Puna K. Kamelamela (decedent) died while attempting to jump, for recreational purposes, from a railing on the Pi'ihonua Bridge in Hilo, Hawai'i into the Wailuku river below. At the time of the incident, a temporary wooden railing was in place on the bridge, which snapped as decedent attempted to jump.

---

[1] Dominic Kamelamela is the son of decedent Puna K. Kamelamela.

[2] The Honorable Greg K. Nakamura presided.

The circuit court initially denied a motion for summary judgment filed by Defendant-Appellee County of Hawai'i (County). The County thereafter filed a motion for reconsideration of the order denying the County's motion for summary judgment, which the circuit court granted. Judgment was entered in favor of the County and against Crivello. In this appeal, Crivello asserts a number of points of error, which we summarize as follows:

(1) The circuit court erred in concluding that the County did not have a duty of care to make the bridge railing reasonably safe so that decedent could jump off from it.

(2) The circuit court erred in concluding that the County did not have a duty to repair or maintain the bridge railing so as to make the railing safe for decedent to jump off from it.

(3) The circuit court erred in concluding that the County did not owe a duty of care to Decedent to warn or take other reasonable precautions as to the specific repair to the bridge railing at issue in this matter.

(4) The circuit court erred in concluding that:

> The imposition of a legal duty is based, in part, on the concept of foreseeability. This rests on the inquiry as to whether it is reasonably foreseeable that the defendant's conduct would result in harm to the injured person. In addition, the imposition of a tort duty rests on policy considerations.

(5) The circuit court erred in concluding that:

> The purpose of a bridge on a roadway is to allow vehicular and pedestrian traffic to pass over a particular geographical obstacle, in most cases a water feature. The purpose of a bridge railing is to prevent vehicles and pedestrians from accidentally falling into the water feature.

(6) The circuit court erred in concluding that the "purpose of a bridge railing is not to provide a launching point for people to jump off a bridge."

(7) The circuit court erred in concluding that:

> There is no policy reason for a municipality to design or maintain a bridge railing so that it is safe for someone to jump off of it. The imposition of such a legal duty would penalize the municipality for the foolhardy act of someone jumping off a bridge railing.

(8) The circuit court erred in concluding that "the sum of policy considerations do not warrant imposing a duty on the County."

After a careful review of the record and the briefs submitted, having given due consideration to the arguments advanced and the issues raised in this appeal, and for the reasons set forth below, we affirm the circuit court's judgment in favor of the County.

## I.  Standard of Review

### A.  Summary Judgment

On appeal, a circuit court's grant or denial of summary judgment is reviewed de novo.  Haw. Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000) (citation omitted).  The Hawai'i Supreme Court has often articulated that:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Pulawa v. GTE Hawaiian Tel., 112 Hawai'i 3, 10, 143 P.3d 1205, 1212 (2006) (quoting Price v. AIG Haw. Ins. Co., 107 Hawai'i 106, 110, 111 P.3d 1, 5 (2005)); see also Rule 56, Hawai'i Rules of Civil Procedure ("HRCP") (2000).

### B.  Legal Duty

"'This court addresses whether a defendant owes a duty of care to a particular plaintiff as a question of law under the right/wrong standard.'"  Pulawa, 112 Hawai'i at 10, 143 P.3d at 1212 (quoting Blair v. Ing, 95 Hawai'i 247, 253, 21 P.3d 452, 458 (2001)).

## II.  Factual Background

The pertinent and material facts in this case are not in dispute.  Based on the record in this case, it is uncontested

that on January 1, 2006, the decedent fell and died while attempting to jump from the top railing of the Pi'ihonua Bridge into the Wailuku river below. The bridge's top railing originally consisted of tubular aluminum railings. A portion of the top railing measuring approximately ten feet in length was replaced with a 2x4 piece of lumber (the 2x4) by the County of Hawai'i Department of Public Works (DPW). The 2x4 was attached using 3/8-inch carriage bolts, washers, and nuts by DPW employees. At the time of decedent's death, the 2x4 had been in place for about eight and a half months.

The distance from the top of the bridge railing to the rocks in the river below at the time of the incident was approximately forty-three feet. The water level in the river was low enough for the bottom of the river to be visible from the bridge. The existence of exposed rocks below the bridge require a jumper to "kick off...kind of hard" in order to clear them.

Henry Sarandi, Jr. (Sarandi), who was with the decedent at the time of the incident, considers jumping from the bridge to be "very dangerous." He agreed when questioned that, although there were no warning signs, it is "obvious that it's dangerous to jump there." For about a minute prior to jumping, the decedent stood with one foot on the 2x4 and the other foot on the railing below the 2x4. Sarandi then told the decedent "[o]h boy, that thing no look too sturdy, kind of flimsy." The decedent ignored Sarandi's warning not to jump from the 2x4. According to Sarandi, the decedent put both feet on the 2x4 and was balancing on it as the 2x4 was "kind of bouncing." Decedent then bent down, and when he kicked to jump, "he kicked so hard that the . . . [2x4] just snapped," sending the decedent straight down from the bridge to the rocks below. The decedent had jumped from the same railing just a few days earlier. Another witness, Mark Rezentes, also saw the incident that day.

Crivello admits that at the time of the incident, it was unlawful to (1) jump from the bridge; and (2) stand on the bridge's railing. Particularly, decedent's actions were in

4

violation of § 24-252 of the Hawai'i County Code, as amended (entitled "Highway railings; prohibited acts"), which states: "No person shall sit, stand, or walk or aid or assist any other person to sit, stand, or walk upon the railing of any highway bridge, overpass or guardrail." Crivello also admits that "[i]njury is an inherent risk of jumping off the Pi'ihonua Bridge railing."

During the ten years preceding the incident, there were no claims or lawsuits involving persons jumping from the Pi'ihonua Bridge. At most, two employees with the County's Department of Public Works, Robert Aguiar (Aguiar) and Charles Gomes (Gomes), testified in their depositions that they had "heard" generally of people jumping from bridges in the area.[3]

---

[3] In opposing the County's motion for summary judgment, Crivello attached a portion of Aguiar's deposition testimony, which included the following:

> Q: You've lived here a long time. Do you know that young guys tend to jump off those bridges recreationally into the river below?
>
> . . .
>
> Q: Do you know?
>
> . . .
>
> A: Yeah, no, personally, I don't know, but I -- I've heard people talk about that, but no, I -- personally, no, I never talked to anyone that jumped or anything like that.
>
> Q: But you had heard that people do jump, huh?
>
> A: Yeah.

Crivello also attached a portion of Gomes's deposition testimony, including the following:

> Q: . . . You have heard that people do jump from those bridges, though, huh?
>
> A: Not me.
>
> Q: No, you wouldn't jump. I'm not saying you. I wouldn't, either. But they recreationally jump into the river there, huh?

## III. Discussion

Although Crivello states a number of points of error, the crux of this appeal is whether the County owed a legal duty to decedent to either (a) make the bridge railing safe for decedent to jump from it; or (b) warn decedent or take other reasonable precautions relating to the potential dangers of someone jumping from the bridge railing. The points of error stated by Crivello are subsumed within these two issues. We conclude that, under prevailing Hawai'i law, the County did not owe such legal duties to decedent.

### A. Proceedings Below

The circuit court initially denied the County's motion for summary judgment. The court ruled that although the County did not have a duty of care to make the bridge railing reasonably safe for decedent to jump from it, the County owed a duty to decedent, based on Zmieske v. State, 579 N.Y.S.2d 482 (N.Y. App. Div. 1992), to take reasonable precautions if it were on notice that people were jumping from the bridge. In opposing the motion for summary judgment, Crivello had submitted the deposition testimony of Aguiar and Gomes that they had generally "heard" of people jumping from the bridge. The circuit court therefore ruled that for the County to prevail on its motion, it had the burden to produce "evidence that no County employee responsible

---

A:     That's kind of high.

. . .

Q:     Yeah, but you've heard about -- but you've heard about it, at least, huh?

. . .

Q:     You've heard people doing it?

A:     Actually, I - it's one kind of high bridge. I wouldn't - I wouldn't know anybody that would jump over that bridge, yeah. I don't know.

Q:     But you had heard that people had done it, huh, before?

A:     Yeah, I heard people did there.

6

for highway bridge repair or maintenance or having the duty to report the existence of highway bridge defects had knowledge from any source about people jumping off the Pi'ihonua Bridge," and that the County had failed to meet this burden.

In addressing the County's motion for reconsideration, the circuit court reiterated its determination that the County did not have a duty to make the bridge railing safe for decedent to jump from it. The circuit court then relied on concessions by Crivello to reach its conclusion that decedent's comparative negligence exceeded the County's comparative negligence such that summary judgment was warranted in favor of the County. In particular, the circuit court relied on the following concessions:

. . . .

5. If the County did not have a duty of care to make the Pi'ihonua Bridge railing reasonably safe for Decedent to jump off of, Plaintiff admits and concedes that Decedent's comparative negligence exceeds the County's comparative negligence, if any, in this instance.

6. Further, Plaintiff admits and concedes that Decedent's comparative negligence would exceed the County's comparative negligence, if any, even if the County had a duty to warn or take other reasonable precautions as to people jumping from the Pi'ihonua Bridge generally.

As explained below, we agree with the circuit court that the County did not have a duty to make the bridge railing safe so that decedent could jump from it. However, we diverge from the circuit court's reasoning with regard to whether the County had a duty to warn or take other precautions as to people jumping from the bridge. Because jumping from the bridge is a known and obvious hazard, under Hawai'i law the County was not obligated to warn or take other precautions regarding people jumping from the bridge, and Zmieske is not applicable.

B. **No Duty To Make The Bridge Safe For Decedent To Jump From It**

"[I]t is fundamental that a negligence action lies only where there is a duty owed by the defendant to the plaintiff." Pulawa, 112 Hawai'i at 11, 143 P.3d at 1213 (quoting Bidar v.

7

Amfac, Inc., 66 Haw. 547, 551, 669 P.2d 154, 158 (1983)).
Whether a duty exists is a question of law.  In other words,
"whether . . . such a relation exists between the parties that
the community will impose a legal obligation upon one for the
benefit of the other -- or, more simply, whether the interest of
the plaintiff which has suffered invasion was entitled legal
protection at the hands of the defendant."  Pulawa, 112 Hawai'i at
11-12, 143 P.3d at 1213-14 (quoting Knodle v. Waikiki Gateway
Hotel, Inc., 69 Haw. 376, 385, 742 P.2d 377, 383 (1987)).

In determining whether to impose a duty, the Hawai'i
Supreme Court has considered several factors, including:

> [w]hether a special relationship exists, the foreseeability
> of harm to the injured party, the degree of certainty that
> the injured party suffered injury, the closeness of the
> connection between the defendants' conduct and the injury
> suffered, the moral blame attached to the defendants, the
> policy of preventing harm, the extent of the burden to the
> defendants and consequences to the community of imposing a
> duty to exercise care with resulting liability for breach,
> and the availability, cost, and prevalence of insurance for
> the risk involved.

Pulawa, 112 Hawai'i at 12, 143 P.3d at 1214 (quoting Blair, 95
Hawai'i at 260, 21 P.3d at 465).  The Hawai'i Supreme Court has
further stated:

> [r]egardless of the source of a particular duty, [however,]
> a defendant's liability for failing to adhere to the
> requisite standard of care is limited by the pr[o]position
> that **the defendant's obligation to refrain from particular
> conduct** [or, as the circumstances may warrant, to take
> whatever affirmative steps are reasonable to protect
> another] **is owed only to those who are foreseeably
> endangered by the conduct and only with respect to those
> risks or hazards whose likelihood made the conduct [or
> omission] unreasonably dangerous.**

Pulawa, 112 Hawai'i at 12, 143 P.3d at 1214 (brackets and bold
emphasis in original) (quoting Doe Parents No. 1 v. State Dep't
of Educ., 100 Hawai'i 34, 72, 58 P.3d 545, 583 (2002)).

The imposition of a legal duty is also determined by
considering issues beyond foreseeability, including policy
considerations.  Taylor-Rice v. State, 91 Hawai'i 60, 71-72, 979
P.2d 1086, 1097-98 (1999).

We start by noting that there is no special relationship between the decedent and the County in this case such that a duty would arise from their relationship. Moreover, given the circumstances of decedent choosing to engage in the dangerous act of jumping from the Pi'ihonua Bridge, we see little basis to attach moral blame to the County, and the connection between the County putting up the temporary railing and decedent's death is made only because of decedent's decision to engage in the dangerous activity. Therefore, with regard to whether the County had a duty to make the bridge safe for someone to jump from it, we focus our analysis on the issues of foreseeability and policy considerations.

"[I]n the context of determining the existence and scope of a duty, foreseeability is a question of law for the court to resolve." Pulawa, 112 Hawai'i at 13, 143 P.3d at 1215 (citations omitted). Moreover,

> [f]oreseeability as it impacts duty determinations refers to the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care[.]

Id. (citations omitted).

The test of foreseeability "is whether there is some probability of harm sufficiently serious that a reasonable and prudent person would take precautions to avoid it." Pulawa, 112 Hawai'i at 12, 143 P.3d at 1214 (quoting Knodle, 69 Haw. at 388, 742 P.2d at 385). "It does not mean foreseeability of any harm whatsoever, and it is not sufficient that injury is merely possible." Pulawa, 112 Hawai'i at 12, 143 P.3d at 1214 (quoting Henderson v. Prof'l Coatings Corp., 72 Haw. 387, 396, 819 P.2d 84, 90 (1991)). Thus, "there is no duty to guard against merely possible, as opposed to likely or probable, harm." Pulawa, 112 Hawai'i at 17, 143 P.3d at 1219 (quoting Ethyl Corp. v. Johnson, 49 S.W.3d 644, 648 (Ark. 2001)). Furthermore, "in determining the scope of the defendant's duty, the focus is on the

defendant's viewpoint, that is, whether the defendant could reasonably foresee the plaintiff's injury." Pulawa, 112 Hawai'i at 16, 143 P.3d at 1218 (quoting Yager v. Ill. Bell Tel. Co., 667 N.E.2d 1088, 1092 (Ill. App. Ct. 1996)).

In light of the uncontested facts in this case, we hold that it was not foreseeable from the viewpoint of the County that there was a probability of harm (i.e., someone being injured or killed from jumping off the bridge railing) sufficiently serious that a reasonable person would have taken precautions to avoid it. It is uncontested that in the ten years preceding the incident, the County did not receive any claims, and no lawsuits were filed, involving persons jumping from the bridge. Moreover, Crivello admitted that at the time of the incident, it was unlawful to (1) jump from the bridge and (2) stand on the bridge's railing. Crivello also concedes in her opening brief that a bridge railing's intended purpose is to protect pedestrians from falling into the river. These facts establish that it was not likely, from the County's viewpoint, that someone would be injured or killed jumping off the bridge from the temporary railing.

As noted above, "the concept of duty . . . involves more than mere foreseeability of harm." Pulawa, 112 Hawai'i at 13, 143 P.3d at 1215 (brackets and internal quotation marks omitted) (quoting Taylor-Rice, 91 Hawai'i at 71-72, 979 P.2d at 1097-98 (1999)). The imposition of a duty rests not only on the concept of foreseeability, but on policy considerations. Taylor-Rice v. State, 91 Hawai'i at 71-72, 979 P.2d at 1097-98. The Hawai'i Supreme Court has noted generally that:

> [i]n considering whether to impose a duty of reasonable care on a defendant, we recognize that duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. Legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done. In determining whether or not a duty is owed, we must weigh the considerations of policy which favor the [plaintiff's] recovery against those which favor limiting the

10

> [defendant's] liability. The question of whether one owes a
> duty to another must be decided on a case-by-case basis.

Blair, 95 Hawaiʻi at 259-60, 21 P.3d at 464-65 (internal citations omitted) (format altered).

The Hawaiʻi Supreme Court has stated that in some cases, "[p]olicy considerations may dictate that [the court] should not sanction a cause of action, no matter how foreseeable the risk, for the sound reason that the consequences of a negligent act must be limited in order to avoid an intolerable burden on society." Lee v. Corregedore, 83 Hawaiʻi 154, 167, 925 P.2d 324, 337 (1996) (citation omitted). Furthermore:

> [a] court's task--in determining duty--is not to decide
> [merely] whether a particular plaintiff's injury was
> reasonably foreseeable in light of a particular defendant's
> conduct, but rather to evaluate more generally whether the
> category of negligent conduct at issue is sufficiently
> likely to result in the kind of harm experienced that
> liability may appropriately be imposed on the negligent
> party.

Taylor-Rice, 91 Hawaiʻi at 72, 979 P.2d at 1098 (brackets in original and quotation marks omitted) (quoting Thing v. La Chusa, 771 P.2d 814, 819 n.3 (Cal. 1989)).

Here, although Aguiar and Gomes had heard generally of people jumping from the bridge,[4] policy considerations weigh in favor of the County. To impose a legal duty that the County make the railing safe for someone to jump from it, and to impose liability on the County for failing to do that, would render the County responsible for the intentionally reckless behavior of individuals taking undue risks. Imposing such a duty, in our view, would not be a tolerable burden on the County and would serve to encourage more individuals to engage in the unduly risky act of jumping from the bridge. We agree with the circuit court's determinations that:

---

[4] While Crivello relies on deposition testimony of Aguiar and Gomes which indicates they heard about people jumping from "those bridges," we presume their statements to include the Piʻihonua Bridge. That is, given the summary judgment standards, we view their testimony in the light most favorable to Crivello as the non-moving party.

. . . .

4. The purpose of a bridge railing is not to provide a launching point for people to jump off a bridge.

5. There is no policy reason for a municipality to design or maintain a bridge railing so that it is safe for someone to jump off of it. The imposition of such a legal duty would penalize the municipality for the foolhardy act of someone jumping off a bridge railing.

6. The sum of policy considerations do not warrant imposing a duty on the County.

Finally, we address Crivello's argument that under Taylor-Rice, the County "has a general duty to design, construct, and maintain its highways and shoulders of highways [and by extension, bridges and its railings] in a reasonably safe manner." Crivello's reliance on Taylor-Rice is misplaced because there the court held that the State had a duty to "design and construct its highways in such a manner as to make them reasonably safe for their intended uses, and thereafter to maintain them in a reasonably safe condition." Taylor-Rice, 91 Hawai'i at 70, 979 P.2d at 1096 (citation omitted) (emphasis added). In Taylor-Rice, the claims flowed from an automobile accident where a driver recklessly operated a vehicle on a state highway, went off the road, and the vehicle "ramped" up a guardrail which was on the shoulder of the road. Thus, in that case, the highway was being utilized for its intended purpose as a highway. Here, as previously noted, Crivello concedes that the bridge railing was intended to prevent pedestrians from falling into the river. The intended use of the bridge railing was not for someone to jump from it.

Based on our analysis above, we hold that the County did not have a duty to make the bridge railing safe so that decedent could jump from it.

C.    **No Duty To Warn Or Take Other Precautions**

The circuit court relied on Zmieske in ruling below that, although the County did not need to make the railing safe for jumping, it had a duty to take reasonable precautions if it was on notice that people were jumping from the bridge. In

12

Zmieske, the claimant sued the State of New York after suffering injuries from diving head first from a bridge into a creek below. The court held that "[t]he State's knowledge of use of the bridge for diving put it on notice of the activity. Claimant's presence on the bridge was thus foreseeable and, as such, the State owed a duty of care to claimant." Zmieske, 579 N.Y.S.2d at 483. The Zmieske court then went on to hold, however, that because the State of New York had posted "No Climbing Diving" signs that were in place on the day of the incident, "[s]uch posting was a reasonable attempt to warn and safeguard claimant" and "no further responsibility [was] required of the State." Id. We hold, however, that Zmieske is not consistent with Hawaii law.

In Friedrich v. Dep't of Transp., 60 Haw. 32, 586 P.2d 1037 (1978),[5] the Hawai'i Supreme Court held that a property owner does not have a duty to eliminate or provide a warning about a known or obvious hazard which a claimant would reasonably be expected to avoid. In that case, a pedestrian suffered serious injuries as a result of slipping and falling off a State-owned pier. Id. at 34, 586 P.2d at 1039. As set out by the court, the circumstances were that:

> [a]ppellant was aware that water would occasionally puddle or collect on the pier. On the day of the accident, appellant was walking slowly around the pier, wearing sandals with rubber soles which had worn smooth. He saw a puddle of water about four to six feet across, so situated that there was an unobstructed dry path in excess of twenty feet wide to the left of the puddle and a strip of dry cement surface about two to three feet wide to the right of the puddle extending to the edge of the pier. Appellant acknowledged that prior to the accident he had avoided stepping into puddles while walking on the pier wearing slippers because it would have been slippery and dangerous. Appellant attempted to pass the puddle along the right side by means of the narrow dry strip along the pier edge, stepped into the side of the puddle, slipped and fell over the edge of the pier.

---

[5] Friedrich has been superseded in part by statute in circumstances where the State or a County operates a public beach park and there are extremely dangerous ocean conditions adjacent to the public beach park. See Bhakta v. County of Maui, 109 Hawai'i 198, 215, 124 P.3d 943, 960 (2005); Hawaii Revised Statutes §663-1.56 (2009 Supp.). Otherwise, however, Friedrich remains good law.

Id. The trial court had "characterized the risk of falling from the pier as an 'obvious danger' which appellant realized or should have realized." Id. at 35, 586 P.2d at 1040.

In affirming that the State was not liable for the plaintiff's claims, the Hawai'i Supreme Court stated:

> [t]he duty of care which the State, as an occupier of the premises, owed to appellant traditionally does not require the elimination of known or obvious hazards which appellant would reasonably be expected to avoid. . . . [I]f the State invited appellant to use the pier as a recreational facility, it assumed a duty to make apparent to appellant any dangers which its invitation otherwise would have impliedly represented to be nonexistent. The obviousness of a risk substitutes for an express warning and satisfies this obligation. Where the government maintains land upon which the public are invited and entitled to enter, it may reasonably assume that members of the public will not be harmed by known or obvious dangers which are not extreme, and which any reasonable person exercising ordinary attention, perception, and intelligence could be expected to avoid.

Friedrich, 60 Haw. at 36-37, 586 P.2d at 1040 (citations and quotations omitted); see also Harris v. State, 1 Haw. App. 554, 557, 623 P.2d 446, 448 (1981) (noting that the Hawai'i Supreme Court "has held that in a negligence action against the State, the duty of care which the State, as an occupier of the premises[,] owed to the appellant does not require the elimination of known or obvious hazards which are not extremes and which appellant would reasonably be expected to avoid.").

In the instant case, attempting to jump from the Pi'ihonua Bridge to the river forty-three feet below was a known and obvious hazard. Sarandi, decedent's friend who warned him not to jump, testified that he believes jumping from the bridge to be "very dangerous" and that it is "obvious that it's dangerous to jump there" even without the presence of warning signs. Crivello further admitted that "[i]njury is an inherent risk of jumping off the [bridge] railing."

Pursuant to Friedrich, the County did not have a duty to warn or take other precautions to prevent individuals from attempting to jump from the bridge, a known and obvious hazard.

14

## IV.   Conclusion

Based on the foregoing, summary judgment in favor of the County was proper and therefore the Final Judgment entered by the circuit court on November 24, 2008 is affirmed.

DATED:   Honolulu, Hawaiʻi, January 6, 2011.

Robert P. Marx
for Plaintiff-Appellant

Brooks L. Bancroft
(Katherine A. Garson with him
on the brief)
Deputies Corporation Counsel
County of Hawaiʻi
for Defendant-Appellee

Chief Judge

Associate Judge

Associate Judge

15